UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

R. DAVIS HOWE, individually and derivatively,

                Plaintiff,

          -against-

THE BANK OF NEW YORK MELLON, as Indenture
Trustee, BIMINI CAPITAL MANAGEMENT, INC.,
and HEXAGON SECURITIES LLC,

                Defendants,

and THE BANK OF NEW YORK MELLON, as
Indenture Trustee, and PREFERRED TERM
SECURITIES XX, LTD.,

                Nominal Defendants.



09 Civ. 10470 (HB)

ECF CASE

**FIRST AMENDED**
**COMPLAINT**

**JURY TRIAL DEMANDED**

       R. DAVIS HOWE ("Plaintiff"), by and through his attorneys, Butzel Long, a professional

corporation, alleges for his First Amended Complaint as follows:

## NATURE OF ACTION

       1.    In this action, plaintiff seeks relief, both directly and derivatively, from the

consequences of the wrongful conduct of defendants in causing the loss of $13.2 million in

principal amount of performing collateral securities from the investment assets of nominal

defendant Preferred Term Securities XX, Ltd. ("PreTSL XX"), and the resulting diminished cash

flow that would have inured to the benefit of PreTSL XX from the $24 million in collateral

securities that were wrongfully removed from the collateral pool underlying PreTSL XX. These

losses are the direct and proximate result of the wrongful conduct of defendant The Bank of New

York Mellon ("BNYM"), as Indenture Trustee (the "Trustee"), in authorizing and causing the

offer to purchase (the "Tender Offer") at a steeply discounted price of all of the outstanding

fixed/floating rate capital securities of Bimini Capital Trust II (the "TruPS") by defendant Bimini Capital Management, Inc. ("Bimini Capital"), in violation of the terms of the Indenture dated December 15, 2005 (the "Indenture"), among PreTSL XX, as Issuer (the "Issuer"), Preferred Term Securities XX, Inc., as Co-Issuer, and BNYM.

2.      As a result of the wrongdoing, bad faith, and abdication of responsibility of the Trustee, Plaintiff brings this action both: (a) directly on his own behalf to recover compensatory damages for the loss of the principal and interest that, but for the wrongful conduct of defendants, would have accrued to Plaintiff's own investment in PreTSL XX; and (b) derivatively on behalf of and in the right of both the Trustee and PreTSL XX, to recover: (i) the $13.2 million in principal amount of collateral securities that was wrongfully and unlawfully diverted by defendants from the PreTSL XX trust estate, as defined in the Indenture (the "Trust Estate") and (ii) the cash flow that would have been enjoyed by the Trust Estate on the $24 million in TruPS that were wrongfully permitted to be redeemed by Bimini Capital at an unconscionable discount with the advice and assistance of defendant Hexagon Securities LLC ("Hexagon").

## JURISDICTION AND VENUE

3.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

4.      The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.      Venue is proper in this District under 28 U.S.C. § 1391(a) and (c) because a substantial part of the events giving rise to these claims occurred in this District. Defendants

2

BNYM and Hexagon also conduct operations from offices in New York. Further, nominal defendant PreTSL XX has consented to jurisdiction in the United States District Court for the Southern District of New York.

## THE PARTIES

6.      Plaintiff R. Davis Howe ("Howe"), through an Individual Retirement Account, at all relevant times owned and continues to own approximately $10,130,444 of the $42,200,000 of Subordinate Income Notes (the "Income Notes") issued by PreTSL XX, due March 22, 2038. Howe is a citizen of the state of Tennessee and is a principal of the general partner and registered investment agent that manages Wolf River Master Fund I ("Wolf River"), which owns approximately $2,998,000 of the original face value of the $332,300,000 Floating Rate Class A-1 Senior Notes issued by PreTSL XX, due March 22, 2038. Wolf River acquired those Senior Notes after July 1, 2009, the record date for the consent solicitation of noteholders in connection with the Tender Offer.

7.      Upon information and belief, defendant BNYM is a corporation organized under the laws of Delaware with its principal place of business in New York, New York. BNYM is also named herein as a nominal defendant to the extent that Plaintiff brings derivative claims in the right of the Trustee.

8.      Upon information and belief, nominal defendant PreTSL XX is a limited liability company incorporated under the laws of the Cayman Islands with its registered office in George Town, Grand Cayman, Cayman Islands. PreTSL XX is or may be a necessary party to this action pursuant to Rule 19 of the Federal Rules of Civil Procedure in order for the Court to afford complete relief among the existing parties or because PreTSL XX claims an interest

relating to the subject of this action and is so situated that disposing of the action in PreTSL XX's absence may impair its ability to protect its interest or leave the remaining defendants subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

9.      Upon information and belief, defendant Bimini Capital is a publicly traded real estate investment trust or REIT (Symbol BMNM: OTC Bulletin Board Market), which is incorporated under the laws of Maryland, and with its principal place of business in Vero Beach, Florida. Upon information and belief, Bimini Capital established Bimini Capital Trust II, which is a statutory business trust formed under the laws of Delaware, to finance its real estate-related investments through the issuance and sale of the TruPS or trust preferred securities.

10.      Upon information and belief, defendant Hexagon is an investment bank and securities firm formed under the laws of Delaware, with its principal place of business in New York, New York. Hexagon advised Bimini Capital in connection with the consent solicitation of noteholders and sale of the TruPs through the Tender Offer.

## FACTUAL BACKGROUND

11.      This case is centered on the wrongful sale of collateral securities that PreTSL XX had granted to BNYM as Indenture Trustee in trust for the benefit of the noteholders of PreTSL XX. PreTSL XX operates as a collateralized debt obligation or CDO. CDOs are securities issued by special purpose vehicles, which are created to facilitate investments through the issuance of notes and equity that are entitled to a return from a pool of collateral investments held by the special purpose vehicle. In general, CDO collateral is composed of debt securities that generate a stream of cash flows in the form of interest payments as well as return of

4

principal. The cash flows from the collateral securities are used to repay to the special purpose vehicle's noteholders the principal amount of their investments and to provide an investment return in the form of a stream of quarterly payments.

12.     In the event, and to the extent, that particular investments in a special purpose vehicle/CDO's investment portfolio are sold or liquidated prior to maturity and/or for less than the par value of the principal, the amount available for distribution as principal and interest to noteholders is diminished.

13.     In this case, PreTSL XX issued notes to its investors, including Plaintiff, that are structured in layers, or tranches, consisting of Senior Notes, Mezzanine Notes, and Income Notes (collectively the "Notes"). The various tranches correspond to the noteholders' respective priority in receiving payment from PreTSL XX's cash flows or, in the case of a sale or disposition of defaulted collateral, from the proceeds thereof. PreTSL XX used the proceeds from the offering of the Notes to purchase various capital and other securities, including the TruPS issued by Bimini Capital Trust II in October 2005, which comprised the collateral securities (collectively the "Collateral Securities" and singularly a "Collateral Security") in the investment portfolio. As set forth below, the Collateral Securities were pledged by PreTSL XX to secure the Notes pursuant to the terms of the Indenture.

## THE RESTRICTIVE TERMS OF THE INDENTURE

14.     The operation of PreTSL XX, including the duties of defendant BNYM as Trustee, is governed by the terms of the Indenture.[1]  A true copy of the Indenture (without exhibits) is attached as Exhibit A hereto.

15.     The Collateral Securities are subject to the lien and security interest of the Indenture for the benefit of the noteholders.  The Collateral Securities, as well as all other property and interests granted to the Indenture Trustee pursuant to the Indenture, constitute the Trust Estate as defined in the Indenture.

16.     PreTSL XX, through the Trustee, distributes on a quarterly basis the available principal and interest proceeds derived from its investment portfolio to the parties entitled to receive payments from those cash flows, including its noteholders.  This quarterly distribution is governed by the terms of the Indenture.  Section 8.4, which is titled "Distributions; Priority of Payments," and is commonly referred to as the "waterfall," sets forth the order in which parties are to receive payments.

17.     PreTSL XX is what is known as a "static" CDO, which does not allow the Trustee or collateral manager to trade the securities in the investment portfolio.  Thus, the PreTSL XX Collateral Securities which comprise the Trust Estate can only be sold or disposed of in very limited and narrowly prescribed circumstances, as set forth in the terms of the Indenture.

18.     In particular, the Indenture sets forth the remedies that are available to the Trustee upon the occurrence of an "Event of Default," as defined in Section 5.1 of the Indenture, in

---

[1] Unless expressly defined herein, capitalized terms shall have the same meaning as defined in the Indenture.

which case the Trustee may, subject to obtaining the consent of Requisite Noteholders, sell or otherwise liquidate the Trust Estate or any portion thereof.

19.     Furthermore, the Trustee may dispose of a defaulted Collateral Security, although the term "defaulted" is not defined in the Indenture. Specifically, Section 5.16(b) states:

> (b) If a breach of a representation or warranty in an Underlying Instrument for a Collateral Security (or the related Corresponding Debenture Indenture, the related placement agreement or certain other related documents) occurs and materially adversely affects the Issuer as the holder of such Collateral Security, then the Requisite Noteholders may direct the Indenture Trustee to exercise the Issuer's rights under those documents, which may include attempting to dispose of such Collateral Security. The net proceeds, if any, will be applied in accordance with Priority of Payments. However, no such disposition in connection with such a breach shall be made unless the Indenture Trustee receives a confirmation from each Rating Agency that such disposition will not result in the reduction, withdrawal or negative qualification of its then current ratings for the Senior Notes or Mezzanine Notes. In addition, the Indenture Trustee may dispose of a defaulted Collateral Security at the direction of the Requisite Noteholders. The net proceeds, if any, from such a disposition would be applied in accordance with the Priority of Payments.

20.     The "Requisite Noteholders" are defined in the Definitions Section of the Indenture as follows:

> "Requisite Noteholders" shall mean for so long as any Senior Notes remain Outstanding, the Holders of more than 66?% [sic] of the Aggregate Principal Amount of the Senior Notes (the Class A-1 Senior Notes and the Class A-2 Senior Notes being considered together as one class for this purpose); thereafter, for so long as any Class B Mezzanine Notes remain Outstanding, the Holders of more than 66?% [sic] of the Aggregate Principal Amount of the Class B Mezzanine Notes; thereafter, for so long as any Class C Mezzanine Notes remain Outstanding, the Holders of more than 66?% [sic] of the Aggregate Principal Amount of the Class C Mezzanine Notes; thereafter, for so long as any Class D Mezzanine Notes remain Outstanding, the Holders of more than

7

> 66?% [sic] of the Aggregate Principal Amount of the Class D
> Mezzanine Notes; and thereafter the Holders of more than 66?%
> [sic] of the Aggregate Principal Amount of the Income Notes.

21.     The Trustee's obligations under Section 5.16 are also subject to the Trustee's

duties with respect to any defaulted Collateral Security as set forth in Section 6.14 of the

Indenture, which states:

> If a default occurs on any Collateral Security or
> Corresponding Debenture, the Requisite Noteholders will have the
> right to direct the Indenture Trustee with respect to any action to be
> taken by the Indenture Trustee, including, without limitation,
> engaging in restructuring efforts, bringing enforcement
> proceedings, engaging investment banking or asset management
> firms and/or taking any other measures. The Indenture Trustee
> will be fully protected with respect to any action taken by it in
> reasonable good faith at the direction of the Requisite Noteholders.

22.     Thus, the Trustee's right to dispose of a defaulted Collateral Security pursuant to

Section 5.16 at the direction of the Requisite Noteholders and its duties with respect to a

defaulted Collateral Security as set forth in Section 6.14 are limited to and predicated upon the

occurrence of a default in the Collateral Security.

23.     Moreover, pursuant to Section 2.17 of the Indenture, the Holders of the Income

Notes have an option to purchase a Collateral Security if it is a "Defaulted Security," as defined

in the Indenture, at a price to be calculated in accordance with Section 2.17(a) of the Indenture.

24.     Accordingly, the Indenture does not grant the Trustee the discretion or authority

to dispose of a Collateral Security unless an Event of Default has occurred or it is a defaulted

Collateral Security.

**THE WRONGFUL DEPLETION OF PreTSL XX'S
INVESTMENT ASSETS AND THE TRUST ESTATE
RESULTING FROM BIMINI CAPITAL'S REPURCHASE
OF THE TruPS IN BREACH OF THE INDENTURE AND
AT A STEEPLY DISCOUNTED PRICE**

25.     On or about June 19, 2009, BNYM received a letter from Robert E. Cauley, the
Chairman and CEO of Bimini Capital (the "Cauley Letter"), expressing outrage that the Trustee
was apparently not willing to move forward with the transactions to permit Bimini Capital to
repurchase the $50 million in TruPS held by PreTSL XX and another static CDO, PreTSL XXI.
The Cauley Letter stated that "[w]hile we have managed to avoid bankruptcy so far, we now
need to repurchase our trust preferred debt (our TruPS) if we are to survive." The Cauley Letter
then states: "I need you to understand two things: 1) I am extremely upset with the situation your
company has recently put my company in and 2) I need your help to remedy the situation."

26.     After referring to two prior tender offers by Bimini Capital to repurchase the $50
million in TruPS held by PreTSLs XX and XXI for $7.5 million, which failed, the Cauley Letter
stated:

> I just learned today that your company may have reversed its
> position and now contends that the indentures for the PreTSL deals
> do not permit cash repurchases to occur. **THIS IS AN
> OUTRAGE.** Relying on BoNY's earlier advice, we have incurred
> material costs—costs we are barely able to pay—in getting to this
> point, not to mention our considerable investment of time and
> effort. We, as well as the AAA holders we have been able to
> locate (at considerable cost and effort), are ready to move forward
> but have just run into an abrupt, unnecessary and unfair about-face
> on the part of your company. (emphasis in original.)

27.     The Cauley Letter is addressed to Chris Grose at BNYM, who, upon information
and belief, is no longer employed by BNYM and is currently an employee of defendant
Hexagon—the investment advisor that Bimini Capital engaged for the specific purpose of

9

assisting Bimini Capital to persuade BNYM to permit this wrongful and unauthorized transaction.

28.    BNYM, as Trustee, thereafter acceded to Bimini Capital's demands to move forward with the Tender Offer, and to permit Bimini Capital, with the assistance of Hexagon, to repurchase the TruPS at a substantial discount, notwithstanding that the sale or repurchase of such Collateral Security was not permitted under the terms of the Indenture. The Trustee could not reasonably or in good faith have relied upon the Cauley Letter as a basis for disposing of the TruPS because the Trustee lacked any discretionary authority to dispose of a Collateral Security based on the wholly unsupported assertion by Bimini Capital's Chairman and CEO, Cauley, regarding the possibility of bankruptcy or the threat of a prospective default, and the Trustee knew or should have known that the proposed transaction was impermissible.

29.    Bimini Capital has not filed for bankruptcy and, upon information and belief, the TruPS which were not repurchased by Bimini Capital, and which remain collateral securities in the investment portfolio of PreTSL XXI, are continuing to perform without a default in payment of principal or interest. Moreover, instead of filing for bankruptcy, on January 19, 2010, Bimini Capital announced that it paid a special dividend of $0.65 per share that was previously announced on November 9, 2009, to holders of record as of December 9, 2009, consisting of approximately $1.8 million in cash and 72.4 million shares of Class A Common stock.

30.    On or about June 30, 2009, BNYM sent a "Notice of Offer and Request for Direction" to the Holders of the Senior Notes as of July 1, 2009 that included the terms of the Tender Offer by Bimini Capital to purchase for cash all of the TruPS of Bimini Capital Trust II held by PreTSL XX (the "Offer and Request for Direction"). The Offer and Request for

10

Direction was thereafter supplemented and amended by a "Notice of Increase in Offer Price and Extension of Response Time for Offer and Request for Direction" and a further "Notice of Extension of Response Time for Offer and Request for Direction" that extended the deadline to September 30, 2009 for the Holders of the Senior Notes to provide direction to the Trustee by voting to accept or reject the amended and restated Tender Offer dated August 26, 2009.

31.     The Offer and Request for Direction, as supplemented and amended, purported to base the Tender Offer to purchase the TruPS by Bimini Capital on Section 5.16(b) of the Indenture, stating in relevant part: "Pursuant to Section 5.16(b) of the Indenture, approval of the Offer requires the direction of Holders of more than 66-2/3% of the Aggregate Principal Amount of the Senior Notes (the Class A-1 Senior Notes and the Class A-2 Senior Notes being considered together as one class for this purpose) (the 'Requisite Noteholders')."

32.     At the time and continuing thereafter, the TruPS were performing securities. Thus, the Offer and Request for Direction, as supplemented and amended, was false and misleading in that it (a) misrepresented that the Tender Offer was based upon and authorized by the terms of Section 5.16(b) of the Indenture when in fact no default had occurred with respect to the Collateral Security and (b) contained material omissions of fact in failing to disclose any information regarding the nature of the purported default, the manner of its determination, or the financial condition of Bimini Capital.

33.     On or about October 21, 2009, the Trustee obtained an opinion from special counsel for Bimini Capital in connection with the Tender Offer, as amended (the "Opinion"). The Opinion failed to identify any default with respect to the TruPS that would trigger the Trustee's right and ability to dispose of the TruPS and instead merely **assumed** the existence of

11

the facts needed to justify the contemplated transaction. Specifically, the opinion letter stated that "we have assumed that the consent of the Requisite Noteholders has been obtained in accordance with Section 5.16(b) of the Indenture." Accordingly, the Trustee could not in good faith have relied upon that Opinion in connection with its solicitation of the direction of the Holders of the Senior Notes with respect to the Tender Offer.

34.      Pursuant to the terms of the Tender Offer, as amended, PreTSL XX sold to Bimini Capital all $24 million aggregate principal amount of TruPS for a discounted amount of only $10.8 million in cash, or approximately 45% of the par value of the principal amount.

35.      Furthermore, in addition to the $10.8 million discounted purchase price it paid for the TruPS, upon information and belief Bimini Capital paid separate, additional consideration of approximately $3.3 million directly to certain Holders of the Senior Notes (the "Consenting Senior Holders"), with the advice and assistance of Hexagon, as an inducement for the Consenting Senior Holders to consent to the repurchase of the TruPS by Bimini Capital, rather than to retain those fully performing collateral securities in the Trust Estate for the benefit of PreTSL XX and all its investors.

36.      As a result of defendants' wrongful conduct as described above in soliciting the sale and repurchase of the Bimini Capital TruPS without the occurrence of a default and in breach of the Indenture, the Tender Offer was not permissible or properly authorized, and the Trust Estate has suffered and will continue to suffer the loss of the income stream flowing from $24 million in principal through the Indenture waterfall plus $13.2 million in principal that has been diverted from PreTSL XX's investment assets, and defendant Bimini Capital has been unjustly enriched in an amount equal to those unlawful diversions of Trust Estate assets.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

37.    Plaintiff brings certain of the claims set forth below derivatively on behalf of and in the right of both the Trustee and PreTSL XX to redress injuries suffered and to be suffered by the Trust Estate as a result of the breaches of duty and other violations of law by defendants.

38.    This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

39.    Plaintiff will adequately and fairly represent the interests of the Trust Estate and its investors in enforcing and prosecuting the rights that form the subject matter of this action. At all relevant times, Plaintiff has acted equitably and in good faith, without any ulterior motive, and in the belief that the noteholders are entitled to the relief sought on their behalf.

40.    Plaintiff has not made any demand on the Trustee to institute this action. Such demand would be a futile and useless act since the Trustee is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action complaining about the Trustee's own alleged wrongful conduct in authorizing and permitting the diversion of the TruPS from the Trust Estate.

41.    Plaintiff has not made a formal demand on PreTSL XX to institute this action because such demand would be a futile and useless act. Acting through counsel, PreTSL XX has specifically advised Plaintiff that PreTSL XX does not wish to incur the expenses of participating in this action.

42.    Section 5.6 of the Indenture, which is headed "Limitation of Suits," contains a so-called "no action" provision that by its terms is predicated on the occurrence of an Event of

13

Default. Section 5.6 is inapplicable in this action because Plaintiff is not seeking payment on the Income Notes as a result of an uncured Event of Default and, in any event, is inapplicable because the Trustee's own wrongful conduct, acting in concert with Bimini Capital and Hexagon, is at issue.

## FIRST CLAIM FOR RELIEF

### Breach of Contract
### (Individually Against Defendant BNYM)

43.     Plaintiff incorporates the allegations in paragraphs 1 through 42 as if fully set forth herein.

44.     The Indenture is a valid and binding contract entered into between BNYM and PreTSL XX. The Indenture provides, among other things, the terms on which BNYM acts as Trustee of the Collateral Securities that comprise the Trust Estate.

45.     As a noteholder of PreTSL XX, Plaintiff has a legal and equitable right, remedy or claim under the Indenture and is a beneficiary of the Indenture.

46.     As set forth above, BNYM materially breached its contractual obligations under the Indenture by permitting Bimini Capital to repurchase the TruPs, which were a performing, non-defaulted Collateral Security, in violation of the terms of the Indenture and at a substantially discounted price.

47.     Plaintiff has performed his obligations under the Indenture.

14

48.     As a direct result of BNYM's breach of the Indenture, Plaintiff has been damaged in the amount of the loss of his share of the income stream that would have flowed from $24 million in Bimini TruPS and $13.2 million in principal through the Indenture waterfall.

## SECOND CLAIM FOR RELIEF

### Breach of Contract
### (Derivatively in the Right of BNYM, as Trustee, and on Behalf of PreTSL XX Against Defendant BNYM)

49.     Plaintiff incorporates the allegations in paragraphs 1 through 48 as if fully set forth herein

50.     Plaintiff brings this claim derivatively on behalf of and in the right of the Trustee and PreTSL XX.

51.     As set forth above, the Trustee has breached its duties under the Indenture and is incapable of acting disinterestedly, has acted in bad faith, or has abdicated its function, such that the Trustee is not in a position to represent fairly the interests of the Trust Estate and its investors, and PreTSL XX has made clear that it does not intend to do so.

52.     The Indenture is a valid and binding contract entered into between BNYM and PreTSL XX. The Indenture provides, among other things, the terms on which BNYM acts as Trustee of the Collateral Securities that comprise the Trust Estate.

53.     The Trust Estate and the noteholders of PreTSL XX have legal and equitable rights and are beneficiaries under the Indenture.

54.     As set forth above, BNYM materially breached its contractual obligations under the Indenture by permitting Bimini Capital to repurchase the TruPs, which were a performing,

non-defaulted Collateral Security, in violation of the terms of the Indenture and at a substantially discounted price.

55.    PreTSL XX has performed its obligations under the Indenture.

56.    As a direct result of BNYM's breach of the Indenture, the Trust Estate and PreTSL XX's investment assets have been depleted in the principal amount of $13.2 million, and the Trust Estate has been deprived of the stream of income that would have accrued to the Trust Estate from $24 million in periodic cash payments from the Bimini TruPS that were wrongfully repurchased by Bimini Capital.

## THIRD CLAIM FOR RELIEF

### Tortious Interference With Contract
### (Individually Against Defendants Bimini Capital and Hexagon)

57.    Plaintiff incorporates the allegations in paragraphs 1 through 56 as if fully set forth herein.

58.    The Indenture is a valid and binding contract between BNYM and PreTSL XX.

59.    Plaintiff has a legal and equitable right, remedy or claim under the Indenture and is a beneficiary of the Indenture.

60.    Bimini Capital and Hexagon were aware of the Indenture and its terms.

61.    Bimini Capital and Hexagon intentionally and improperly procured a breach of the Indenture by causing the Trustee to permit and authorize the purchase of the TruPS by Bimini Capital.

62.     As a direct and proximate result of Bimini Capital's and Hexagon's tortious interference, Plaintiff has been damaged in the amount of the loss of his share of the income stream that would have flowed from $24 million in Bimini TruPS and $13.2 million in principal through the Indenture waterfall, for which damages Bimini Capital and Hexagon are jointly and severally liable.

### FOURTH CLAIM FOR RELIEF

#### Tortious Interference With Contract
**(Derivatively in the Right of BNYM, as Trustee, and on Behalf of PreTSL XX Against Defendants Bimini Capital and Hexagon)**

63.     Plaintiff incorporates the allegations in paragraphs 1 through 62 as if fully set forth herein.

64.     Plaintiff brings this claim derivatively on behalf of and in the right of the Trustee and PreTSL XX.

65.     As set forth above, the Trustee has breached its duties under the Indenture and is incapable of acting disinterestedly, has acted in bad faith, or has abdicated its function, such that the Trustee is not in a position to represent fairly the interests of the Trust Estate and its investors, and PreTSL XX has made clear that it does not intend to do so.

66.     The Indenture is a valid and binding contract between BNYM and PreTSL XX.

67.     The Trust Estate and the noteholders of PreTSL XX have legal and equitable rights and are beneficiaries under the Indenture.

68.     Bimini Capital and Hexagon were aware of the Indenture and its terms.

17

69.    Bimini Capital and Hexagon intentionally and improperly procured a breach of the Indenture by causing the Trustee to permit and authorize the purchase of the TruPS by Bimini Capital.

70.    As a direct and proximate result of Bimini Capital's and Hexagon's tortious interference, the Trust Estate and PreTSL XX's investment assets have been depleted in the principal amount of $13.2 million, and the Trust Estate has been deprived of the stream of income that would have accrued to the Trust Estate from $24 million in periodic cash payments from the Bimini TruPS that were wrongfully repurchased by Bimini Capital.

## FIFTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty
### (Individually Against Defendant BNYM)

71.    Plaintiff incorporates the allegations in paragraphs 1 through 70 as if fully set forth herein.

72.    Plaintiff, as a noteholder of the PreTSL XX Income Notes, is a beneficiary of the Indenture.  BNYM, as Indenture Trustee, owed fiduciary duties of loyalty and good faith to Plaintiff.

73.    BNYM breached its fiduciary duties to Plaintiff by, among other things, separate and apart from the terms of the Indenture, failing to protect and preserve the Collateral Securities in the Trust Estate and instead allowing the diversion from PreTSL XX's investment assets and the Trust Estate of $13.2 million in principal by Bimini Capital.

74.    BNYM further breached its fiduciary duties to Plaintiff by acceding to the wrongful demands of Bimini Capital and allowing the diversion from PreTSL XX's investment

18

assets and the Trust Estate of $13.2 million in principal amount of TruPS, including obtaining the consent of the Requisite Noteholders by means of the Offer and Request for Direction, as supplemented and amended, which was false and misleading in that it (a) misrepresented that the Tender Offer was based upon and authorized by the terms of Section 5.16(b) of the Indenture when in fact no default had occurred with respect to the Collateral Security and (b) contained material omissions of fact in failing to disclose any information regarding the nature of the purported default, the manner of its determination, or the financial condition of Bimini Capital.

75.     As a direct and proximate result of Bimini Capital's and Hexagon's tortious interference, Plaintiff has been damaged in the amount of the loss of his share of the income stream that would have flowed from $24 million in Bimini TruPS and $13.2 million in principal through the Indenture waterfall, for which damages Bimini Capital and Hexagon are jointly and severally liable.

## SIXTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty
### (Derivatively in the Right of BNYM, as Trustee, and on Behalf of PreTSL XX Against Defendant BNYM)

76.     Plaintiff incorporates the allegations in paragraphs 1 through 75 as if fully set forth herein.

77.     Plaintiff brings this claim derivatively on behalf of and in the right of the Trustee and PreTSL XX.

78.     As set forth above, the Trustee has breached its duties under the Indenture and is incapable of acting disinterestedly, has acted in bad faith, or has abdicated its function, such that

the Trustee is not in a position to represent fairly the interests of the Trust Estate and its investors, and PreTSL XX has made clear that it does not intend to do so.

79.    BNYM, as Indenture Trustee, owed fiduciary duties of loyalty and good faith to the Trust Estate and the noteholders of PreTSL XX.

80.    BNYM breached its fiduciary duties by, among other things, separate and apart from the terms of the Indenture, failing to protect and preserve the Collateral Securities in the Trust Estate and instead allowing the diversion from the Trust Estate of $13.2 million in principal by Bimini Capital.

81.    BNYM breached its fiduciary duties to PreTSL, by, among other things, separate and apart from the terms of the Indenture, failing to protect and preserve PreTSL XX's investment assets and instead allowing the diversion of the Bimini TruPS from PreTSL XX's investment assets and the Trust Estate, and obtaining the consent of the Requisite Noteholders by means of the Offer and Request for Direction, as supplemented and amended, which was false and misleading in that it (a) misrepresented that the Tender Offer was based upon and authorized by the terms of Section 5.16(b) of the Indenture when in fact no default had occurred with respect to the Collateral Security and (b) contained material omissions of fact in failing to disclose any information regarding the nature of the purported default, the manner of its determination, or the financial condition of Bimini Capital.

82.    As a direct and proximate result of BNYM's breaches of its fiduciary duties, the Trust Estate and PreTSL's XX's investment assets have been depleted in the principal amount of $13.2 million, and the Trust Estate has been deprived of the stream of income that would have

accrued to the Trust Estate from \$24 million in periodic cash payments from the Bimini TruPS that were wrongfully repurchased by Bimini Capital.

## SEVENTH CLAIM FOR RELIEF

### Aiding and Abetting Breach of Fiduciary Duty
### (Individually Against Defendants Bimini Capital and Hexagon)

83.    Plaintiff incorporates the allegations in paragraphs 1 through 82 as if fully set forth herein.

84.    Bimini Capital, as purchaser of the TruPS through the Tender Offer, and Hexagon, as adviser to Bimini Capital in connection with the consent solicitation and purchase of the TruPS, aided and abetted the breaches of fiduciary duty by BNYM by knowingly providing material and substantial assistance to such breaches of fiduciary duty.

85.    Bimini Capital and Hexagon were aware that, as a static CDO, the Trustee and PreTSL XX were restricted and prohibited from selling or disposing of the TruPS in the absence of a default and knew that the Offer and Request for Direction in connection with the solicitation of consent by the Requisite Noteholders was false and misleading in that it (a) misrepresented that the Tender Offer was based upon and authorized by the terms of Section 5.16(b) of the Indenture when in fact no default had occurred with respect to the TruPS and (b) contained material omissions of fact in failing to disclose any information regarding the nature of the purported default, the manner of its determination, or the financial condition of Bimini Capital.

86.    Bimini Capital assisted with the breaches of fiduciary duty of BNYM by purchasing the TruPS in violation of the terms of the Indenture and at a substantial discount and by paying additional consideration of approximately \$3.3 million directly to Consenting Senior

Holders as an inducement to the Consenting Senior Holders to consent to the wrongful sale. Hexagon assisted with those breaches of fiduciary duty by providing advice and assistance to Bimini Capital in connection with the consent solicitation and Tender Offer.

87.     As a direct and proximate result of Bimini Capital's and Hexagon's aiding and abetting of BNYM's breaches of fiduciary duty, Plaintiff has been damaged in the amount of the loss of his share of the income stream that would have flowed from $24 million in Bimini TruPS and $13.2 million in principal through the Indenture waterfall, for which damages Bimini Capital and Hexagon are jointly and severally liable.

## EIGHTH CLAIM FOR RELIEF

### Aiding and Abetting Breach of Fiduciary Duty
(Derivatively in the Right of BNYM, as Trustee, and on Behalf of PreTSL XX Against Defendants Bimini Capital and Hexagon)

88.     Plaintiff incorporates the allegations in paragraphs 1 through 87 as if fully set forth herein

89.     Plaintiff brings this claim derivatively on behalf of and in the right of the Trustee and PreTSL XX.

90.     As set forth above, the Trustee has breached its duties under the Indenture and is incapable of acting disinterestedly, has acted in bad faith, or has abdicated its function, such that the Trustee is not in a position to represent fairly the interests of the Trust Estate and its investors, and PreTSL XX has made clear that it does not intend to do so.

91.     Bimini Capital, as purchaser of the TruPS through the Tender Offer, and Hexagon, as adviser to Bimini Capital in connection with the consent solicitation and purchase

of the TruPS, aided and abetted the breaches of fiduciary duty by BNYM by knowingly providing material and substantial assistance to such breaches of fiduciary duty.

92.     Bimini Capital and Hexagon were aware that, as a static CDO, the Trustee and PreTSL XX were restricted and prohibited from selling or disposing of the TruPS in the absence of a default and knew that the Offer and Request for Direction in connection with the solicitation of consent by the Requisite Noteholders was false and misleading in that it (a) misrepresented that the Tender Offer was based upon and authorized by the terms of Section 5.16(b) of the Indenture when in fact no default had occurred with respect to the TruPS and (b) contained material omissions of fact in failing to disclose any information regarding the nature of the purported default, the manner of its determination, or the financial condition of Bimini Capital.

93.     Bimini Capital assisted with the breaches of fiduciary duty of BNYM by purchasing the TruPS in violation of the terms of the Indenture and at a substantial discount and by paying additional consideration of approximately $3.3 million directly to Consenting Senior Holders as an inducement to the Consenting Senior Holders to consent to the wrongful sale. Hexagon assisted with those breaches of fiduciary duty by providing advice and assistance to Bimini Capital in connection with the consent solicitation and Tender Offer.

94.     As a direct and proximate result of Bimini Capital's and Hexagon's aiding and abetting of BNYM's breaches of fiduciary duty, the Trust Estate and PreTSL XX's investment assets have been depleted in the principal amount of $13.2 million, and the Trust Estate has been deprived of the stream of income that would have accrued to the Trust Estate from $24 million in periodic cash payments from the Bimini TruPS that were wrongfully repurchased by Bimini Capital.

## NINTH CLAIM FOR RELIEF

### Unjust Enrichment
### (Individually Against Defendants Bimini Capital and Hexagon)

95.     Plaintiff incorporates the allegations in paragraphs 1 through 94 as if fully set forth herein.

96.     Bimini Capital and Hexagon have engaged in wrongful and inequitable conduct that has caused and will continue to cause injury to Plaintiff.

97.     As a result of their wrongful and inequitable conduct, Bimini Capital and Hexagon have been unjustly enriched. It would be inequitable and unjust to permit Bimini Capital and Hexagon to retain the proceeds of their wrongful conduct.

98.     Plaintiff is entitled to judgment directing Bimini Capital to disgorge the income payments it would have been required to pay to the Trust Estate on the $24 million in TruPS that it wrongfully repurchased and the $13.2 million in principal amount of TruPS obtained as a result of its wrongful and inequitable conduct in connection with the Tender Offer and directing Hexagon to disgorge the fees it received as a result of its wrongful and inequitable conduct in connection with the consent solicitation and Tender Offer for the benefit of the Trust Estate.

## TENTH CLAIM FOR RELIEF

### Unjust Enrichment
### (Derivatively in the Right of BNYM, as Trustee, and on Behalf of PreTSL XX Against
### Defendants Bimini Capital and Hexagon)

99.     Plaintiff incorporates the allegations in paragraphs 1 through 98 as if fully set forth herein.

24

100.     Plaintiff brings this claim derivatively on behalf of and in the right of the Trustee and PreTSL XX. As set forth above, the Trustee has breached its duties under the Indenture and is incapable of acting disinterestedly, has acted in bad faith, or has abdicated its function, such that the Trustee is not in a position to represent fairly the interests of the Trust Estate and its investors, and PreTSL XX has made clear that it does not intend to do so.

101.     Bimini Capital and Hexagon have engaged in wrongful and inequitable conduct that has caused and will continue to cause injury to the Trust Estate and PreTSL XX.

102.     As a result of their wrongful and inequitable conduct, Bimini Capital and Hexagon have been unjustly enriched. It would be inequitable and unjust to permit Bimini Capital and Hexagon to retain the proceeds of their wrongful conduct.

103.     The Trustee and PreTSL XX are entitled to judgment directing Bimini Capital to disgorge the income payments it would have been required to pay to the Trust Estate on the $24 million in TruPS that it wrongfully repurchased and the $13.2 million in principal amount of TruPS obtained as a result of its wrongful and inequitable conduct in connection with the Tender Offer and directing Hexagon to disgorge the fees it received as a result of its wrongful and inequitable conduct in connection with the consent solicitation and Tender Offer for the benefit of the Trust Estate.

## ELEVENTH CLAIM FOR RELIEF

### Rescission/Illegality
### (Derivatively in the Right of BNYM, as Trustee, and on Behalf of PreTSL XX Against Defendant Bimini Capital)

104.     Plaintiff incorporates the allegations in paragraphs 1 through 103 as if fully set forth herein.

25

105.    Plaintiff brings this claim derivatively on behalf of and in the right of the Trustee and PreTSL XX.

106.    As set forth above, the Trustee has breached its duties under the Indenture and is incapable of acting disinterestedly, has acted in bad faith, or has abdicated its function, such that the Trustee is not in a position to represent fairly the interests of the Trust Estate and its investors, and PreTSL XX has made clear that it does not intend to do.

107.    The Tender Offer pursuant to which BNYM authorized and solicited the sale and Bimini Capital purchased the TruPS was unlawful because it included misrepresentations and material omissions in violation of New York and federal law, including the New York Martin Act (N.Y. Gen. Bus. Law § 352-c), General Business Law § 349, General Business Law § 350, and section 17 of the Securities Act of 1933, 15 U.S.C. § 77q, and the regulations promulgated thereunder.

108.    Because the Tender Offer was illegal and impermissible under the terms of the Indenture, the Trustee and PreTSL XX are entitled to judgment against Bimini Capital rescinding the sale of the TruPS to Bimini Capital and directing return of the TruPS to PreTSL XX's investment portfolio and the Trust Estate, together with interest, in exchange for the purchase price, less expenses incurred by the Trustee in connection with the Tender Offer.

WHEREFORE, Plaintiff demands judgment as follows:

A.    <u>In his own right:</u>

(1)    On the First and Fifth Claims for Relief, monetary damages against defendant BNYM in an amount sufficient to compensate Plaintiff for his losses; and

(2)    On the Third and Seventh Claims for Relief, monetary damages against defendants Bimini Capital and Hexagon jointly and severally in an amount sufficient to compensate Plaintiff for his losses; and

(3)    On the Ninth Claim for Relief, judgment directing defendants Bimini Capital and Hexagon to disgorge all amounts received as a result of their wrongful and inequitable conduct; and

B.    On behalf of and in the right of the Trustee and PreTSL XX:

(4)    On the Second and Sixth Claims for Relief, monetary damages against defendant BNYM in an amount sufficient to compensate the Trust Estate and PreTSL XX for their losses; and

(5)    On the Fourth and Eighth Claims for Relief, monetary damages against defendants Bimini Capital and Hexagon jointly and severally in an amount sufficient to compensate the Trust Estate and PreTSL XX for their losses; and

(6)    On the Tenth Claim for Relief, judgment directing defendants Bimini Capital and Hexagon to disgorge all amounts received as a result of their wrongful and inequitable conduct;

(7)    On the Eleventh Claim for Relief, judgment determining that the sale of the TruPS authorized and solicited by the Trustee to defendant Bimini Capital is rescinded, and directing Bimini Capital to return the TruPS to PreTSL XX and the Trust Estate;

(8)    Directing the Trustee and PreTSL XX to take all steps necessary to effectuate the Court's order(s) granting the requested relief;

(9)    Awarding interest, the costs and disbursements of the action, including reasonable attorneys' fees, experts' fees, and expenses; and

(10) Granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
       February 19, 2010

BUTZEL LONG, a professional corporation

By: _____*Robert Sidorsky*_____
        Robert D. Piliero
        Robert Sidorsky
    380 Madison Avenue
    New York, New York 10017
    (212) 818-1110
    piliero@butzel.com
    sidorsky@butzel.com

Attorneys for Plaintiff R. DAVIS HOWE

28

## VERIFICATION

STATE OF MISSISSIPPI    )
                          ) SS:

COUNTY OF DeSOTO    )

      R. DAVIS HOWE, being duly sworn, deposes and says pursuant to Rule 23.1 of the

Federal Rules of Civil Procedure as follows:

      I am the Plaintiff in the within action. I have read the foregoing First Amended

Complaint and know the contents thereof. The contents are true to my own knowledge except as

to the matters therein stated to be alleged upon information and belief, and as to those matters I

believe them to be true.

ALISA RENEE KING

NOTARY PUBLIC
· ID No. 87807
My Comm Expires
November 27, 2011

DESOTO COUNTY
STATE OF MISSISSIPPI

_____
R. DAVIS HOWE

Sworn to before me this
19th day of February 2010

My Commission Expires
November 27, 2011

_____
Notary Public

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

R. DAVIS HOWE, individually and derivatively,

               Plaintiff,

          -against-

THE BANK OF NEW YORK MELLON, as
Indenture Trustee, BIMINI CAPITAL
MANAGEMENT, INC., and HEXAGON
SECURITIES LLC,

               Defendants,

and THE BANK OF NEW YORK MELLON, as
Indenture Trustee, and PREFERRED TERM
SECURITIES XX, LTD.,

               Nominal Defendants.

09 Civ. 10470 (HB)

ECF CASE

**CERTIFICATE OF SERVICE**

I, Robert Sidorsky, hereby certify that on February 19, 2010, I caused a true and correct copy of the First Amended Complaint in the above captioned action to be served via Federal Express Overnight Delivery upon counsel for the parties as follows:

          Dale C. Christensen, Jr., Esq.
          Brian P. Maloney, Esq.
          SEWARD & KISSEL LLP
          One Battery Park Plaza
          New York, NY 10004
          *Attorneys for Defendant Bank of New York*
          *Mellon, as Indenture Trustee*

          Kelly M. Hnatt, Esq.
          Benjamin P. McCallen, Esq.
          WILLKIE FARR & GALLAGHER LLP
          787 Seventh Avenue
          New York, NY 10019
          *Attorneys for Defendant Bimini Capital*
          *Management, Inc.*

Richard L. Levine, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
*Attorneys for Defendant Hexagon*
*Securities LLC*

Joel Mitnick, Esq.
Gina DelChiaro, Esq.
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
*Attorneys for Nominal Defendant Preferred*
*Term Securities XX, Ltd.*

Dated: New York, New York
February 22, 2010

Robert sidorsky
ROBERT SIDORSKY (RS 2490)

189541_2.doc